## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **JOY M. KILE et al., on behalf of themselves and a class,** | **COURT FILE NO.:** |
| **Plaintiffs,** | |
| **V** | **COMPLAINT** |
| **TRANSWORLD SYSTEMS, INC., a California Corporation, WELTMAN, WEINBERG & REIS CO. L.P.A., TURNSTILE CAPITAL MANAGEMENT, LLC and U.S. BANK, N.A.,** | **JURY TRIAL DEMANDED** |
| **Defendants** | |

## INTRODUCTION

1.     In this case Defendants WELTMAN, WEINBERG & REIS CO. L.P.A. (Hereinafter "WWR"), along with TRANSWORLD SYSTEMS, INC., (Hereinafter "TSI"), Turnstile Capital Management, LLC ("Turnstile") and U.S. Bank, N.A. ("U.S. Bank"), acting as the agents and servicers of the NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4 (Hereinafter "NCT"), knowingly filed a collection lawsuit against Plaintiff in a distant forum 3 hours' drive from both her place of residence and the county where the alleged contract was signed.  Defendants refuse to dismiss said action and thereby intentionally continue to increase Plaintiff's actual damages in defending that matter in a distant forum.

2.     Plaintiff alleges violations of the FDCPA, 15 U.S.C. § 1692 et seq., the Michigan

Occupation Code ("MOC"), MCL 339.901 et seq; or alternative to the MOC, for violations under the Michigan Regulation of Collection Practices Act, ("MRCPA") MCL 445.251 et seq.

3.      The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

4.      In enacting the FDCPA, Congress found that : "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

5.      Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." And that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management, LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

6.      The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

7.      Plaintiffs seek to enforce those policies and civil rights which are expressed through

the FDCPA, 15 U.S.C. § 1692 *et seq.*

## JURISDICTION

8.   Jurisdiction of this Court arises under 28 U.S.C. § 1331 for claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k.   This Court may assert supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 arising out of the same nucleus of operative facts.

9.   Venue is proper in this District because the harm to Plaintiff occurred in Lapeer County, Plaintiff resides in Lapeer County, the alleged contract was signed in Lapeer County and Defendants transact business in Lapeer County.

## PARTIES

10.   Plaintiff JOY M. KILE (herein after "KILE") is an adult natural person who resides in the County of Lapeer, State of Michigan, and is protected under the FDCPA from harassment, oppression and abuse in connection with the collection of a debt and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and/or a person affected by a violation of the FDCPA with standing to bring this claim under 15 U.S.C. §1692k(a).

11.   Non-Party, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4 (hereinafter "NCT"), is a Delaware statutory trust engaged in the business of collecting debts with its principal place of business located in Delaware.

12.   Defendant Transworld Systems, Inc. (hereinafter "TSI") is a corporation chartered under California law with offices at 507 Prudential Road, Horsham, Pennsylvania

19044. TSI may be served by serving The Corporation Company, 40600 Ann Arbor Road E, Suite 201, Plymouth, MI 48170.

13. TSI is engaged in the business of collection of consumer debts and hiring attorneys to file and maintain civil debt collection lawsuits and obtaining judgments in those cases by utilizing the U.S. Mail, telephone and internet. Plaintiff is informed and believes and thereon allege that TSI directs and manages litigation on behalf of entities such as NCT, by referring NCT's cases to law firms such as WWR.

14. TSI claims to be the Subservicer acting on behalf of NCT entities and similar student loan trusts and claims to be the dedicated custodian of records for the trusts. As such, TSI executes affidavits regarding account documents, verifies responses to discovery and provides testimony on behalf of the various NCT student loan trusts. Plaintiff is informed and believes, and thereon alleges, that TSI provided information about plaintiff to WWR which was intended to, and was used, in an attempt to collect a consumer debt from Plaintiff. Specifically, Plaintiff is informed and believes and thereon alleges that TSI provided Plaintiff's residence address information and other documents to WWR purporting to establish that Plaintiff was in a Debtor-Creditor relationship with NCT.

15. TSI ratified and supported WWR's attempt to collect a consumer debt from Plaintiff.

16. TSI regularly collects, directly or indirectly, consumer debts alleged to be due to another via U.S. Mail, telephone, internet, and civil debt collection lawsuits. TSI is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

17. TSI is a "collection agency" and/or "licensee" as the terms are defined and used in the MOC. Alternatively, TSI is a "regulated person" as the term is defined and used in the MRCPA.

18. During all times pertinent hereto, TSI directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from KILE that are described in this complaint in violation of state and federal law.

19. Transworld is the successor to NCO Financial Systems, Inc. ("NCO").

20. On information and belief, the spinoff changeover occurred in late 2014 or 2015. A press release issued in July 2014 stated:

> Expert Global Solutions (EGS), a global leader in Business Process Outsourcing (BPO) industry and parent company of ARM giant NCO Group, announced Monday that is has entered into an agreement to sell certain segments of its ARM business to private equity firm Platinum Equity. Financial terms of the pending transaction were not disclosed.

> The proposed sale of Transworld Systems, Inc. comprises several business segments within EGS' ARM business: Transworld Systems, Education, Attorney Network, Healthcare Bad Debt, Government, and U.S.-based Third Party Collections. Once the transaction is completed the business is expected to operate as Transworld Systems, Inc. (Transworld) going forward …. (http://www.insidearm.com/daily/debt-collection-news/debt-collection/nco-parent-company-selling-transworld-systems-divesting-third-party-collection-unit/ )

21. The personal practices and forms used by NCO in connection with the loans purportedly owned by National Collegiate continue to be used by Transworld.

22. Transworld manages collection agency and attorney networks, which were previously described on its website,

http://www.Transworld.com/Services/Agency_Attorney_Network.html,as follows:

Transworld Systems, Inc. is expanding its existing Agency and Attorney Networks with current and new business opportunities. We are extremely proud of our Agency and Attorney Networks which designs and implements cost-effective collection solutions on leading-edge technology and the expertise needed to achieve results.

We strive to surpass the growing and complex needs of our clients through the professional services provided by our Agency and Attorney Networks. Transworld is currently seeking collection agencies and law firms to support our growing network and expanded business opportunities. Transworld has a variety of business opportunities in which we are seeking professional, cost-conscious industry experts to join our Agency and Attorney Networks. The business opportunities contain, although not limited to, the following: healthcare, commercial, student loans, telecommunications, and bank card.

23. Transworld's agency and attorney networks are continuations of virtually identical networks set up by NCO.

24. In 2010, NCO's parent company described those agency and attorney networks as follows in a Form 10-K annual report: NCO employees "coordinate and implement legal collection solutions undertaken on behalf of our clients through the management of nationwide legal resources specializing in collection litigation. Our collection support staff manages the attorney relationships and facilitates the transfer of necessary documentation."

25. As a successor to NCO, Transworld took over NCO's role as default servicing agent for student loans owned by a purported purchaser of defaulted student loans, National Collegiate.

26. Defendant U.S. Bank is a federally chartered corporation with principle offices located at 800 Nicollet Mall Minneapolis, MN 55402 United States. It does business in Michigan, and has ATMs located in Grandville Michigan and Auburn Hills Michigan.

27.   U.S. Bank was the back-up Special Servicer for each trust established by National Collegiate under a Special Servicing Agreement dated March 1, 2009. When the original Special Servicer, First Marblehead, resigned, U.S. Bank became Special Servicer.

28.   Under Special Servicing Agreement, the Special Servicer provides certain services for loans that are more than thirty days delinquent.

29.   Loans which are thirty days delinquent are considered to be in default.

30.   "Special servicing" is industry jargon for the servicing of defaulted loans.

31.   U.S. Bank contracted with Transworld to act as Sub-Servicer and, with Turnstile, to act as Special Sub-Servicer for each National Collegiate trust.

32.   Defendant Turnstile is a limited liability company organized under Delaware law with principal offices at 402 West Broadway, Suite 2000, San Diego, California 92101. It does business in Texas. It does business in Michigan. Its registered agent and office is National Registered Agents, Inc., 40600 Ann Arbor Road E, Ste 201, Plymouth, MI 48170.

33.   Turnstile is engaged in the business of collection defaulted student loans owed to others.

34.   Turnstile uses the mail and telephone system in conducting its business.

35.   On information and belief, Turnstile retained Transworld to collect from plaintiffs.

36.   Defendant, Weltman, Weinberg & Reis, L.P.A. ("WWR") is a law firm organized as an Ohio professional corporation with principal offices at 323 W. Lakeside Ave., Suite

200, Cleveland, OH 44113. WWR is a law firm collection agency which operates in Michigan from an address of 2155 Butterfield Dr., Suite 200-S, Troy, Michigan 48084.

37. In *Heintz v. Jenkins*, 514 U.S. at 299, 115 S.Ct. 1489, 131 L.Ed.2d 395, the United States Supreme Court made clear that the FDCPA applies to "attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *See also Beler v. Blatt, Hasenmiller, Leibsker & Moore, L.L.C.*, 480 F.3d 470, 472 (7th Cir.2007).

38. WWR regularly files state court lawsuits seeking to collect a debt that is in default at the time of the filing of the lawsuit on behalf of its clients and therefore is a debt collector. *See Heintz v. Jenkins,* 514 U.S. 291, 299 (1995).

39. In *Heintz,* 514 U.S. at 294, 115 S.Ct. 1489, 131 L.Ed.2d 395, the United States Supreme Court also held that the FDCPA "applies to the litigating activities of lawyers." Relying on that holding, federal "circuit courts have widely recognized that litigation-related conduct, including the filing of formal complaints, can give rise to claims under the Act." *Lipscomb v. The Raddatz Law Firm, P.L.L.C.*, 109 F.Supp.3d 251, 260 (D.D.C.2015).

40. WWR is engaged by TSI as a debt collector to file collection lawsuits on behalf of NCT.

41. WWR is a "regulated person" as the term is defined and used in the MRCPA, MCL 445.251(xi). Alternatively, WWR is a "collection agency" and "licensee" as the terms are defined and used in MOC.

42. During all times pertinent hereto, WWR directly and indirectly participated in the unlawful debt collection practices to collect an consumer debt from KILE that are described in this complaint in violation of state and federal law.

43. TSI is the principal party on whose behalf WWR acted in the collection of the underlying account as set forth in this Complaint.

44. Each defendant is a "debt collector" as that term defined in 15 U.S.C. §1692a.

## FACTUAL ALLEGATIONS

45. In or about July 2007, Plaintiff is alleged to have incurred a financial obligation, namely as a co-signor to a student loan (the "debt" or "loan") allegedly assigned to NCT. The debt was incurred primarily for family, personal or household purposes and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

46.  Plaintiff's son, David J. Cripps, was the primary borrower and signor to the debt.

47. The debt is in default.

48. KILE has never made a payment on the debt.

49. TSI, Turnstile and U.S. Bank selected WWR as counsel, communicated with WWR as counsel, and instructed WWR to pursue debt collection litigation against the Plaintiffs.

50. TSI, Turnstile and U.S. Bank engaged WWR to collect the debt by means, including but not limited to, filing a lawsuit against KILE.

51. At the time TSI, Turnstile and U.S. Bank engaged WWR to collect the debt, the debt was in default.

52. On or about March 1, 2017, WWR filed a collection lawsuit in the 17th Circuit Court, Kent County, Michigan (the "Complaint") seeking to collect on the debt claimed to be owed by KILE.

53. A true and correct copy of that Complaint and all attachments is attached hereto as **Exhibit 1**.

54. In July of 2007, at the time KILE is alleged to have executed the loan, KILE resided in Lapeer County. KILE has continuously resided in Lapeer county since 1997.

55. KILE has never resided in Kent County Michigan where Defendants filed the lawsuit.

56. At the time WWR filed the lawsuit, WWR knew that KILE resided in Lapeer County. (See Exhibit 1, ¶ 3)

57. In fact, before the Complaint was filed with the Kent County Court, WWR sent a copy of the Complaint to KILE's residence in a letter dated February 22, 2017. (See **Exhibit 2**)

58. Further, one day after filing the collection lawsuit against KILE, WWR also sent a collection letter to her residence in Lapeer County.  The letter requested payment and did not inform KILE that a lawsuit had been filed against her the day before.  (See **Exhibit 3**)

59. It is the practice of defendants to file collection suits against alleged cosigners in the same place where the principal debtors reside.

60. At the time David J. Cripps is alleged to have executed the loan, he resided in Lapeer County.

61. As a direct and proximate cause of Defendants' filing its legal action in a distant forum KILE was forced to hire counsel to file a motion to dismiss the Complaint and/or to change venue which the state court denied.

62. The state court complaint filed by Defendants alleges liability against KILE as a co-signer. However, the cosigner disclosures contained in the loan documents provided to KILE did not comply with applicable federal law.

63. Code of Federal Regulations section 444.3 require that a consumer credit contract contain the following language prior to a co-signer becoming liable on the debt:

NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of *your* credit record.

This notice is not the contract that makes you liable for the debt.

64. The CFR provision, in subdivision (c), requires that the disclosure be given to the co-signer, *prior to becoming obligated*, in a separate document containing the required statement, and no other. Plaintiff was never provided a notice containing the required language in a separate document containing no other statements, despite Defendants later generating and producing this form in state court litigation. As a result,

Defendants could not and did not comply with the Code of Federal Regulations and its subsequent attempts to collect was an unfair practice.

65. The state court case against KILE remains pending in the 17th Judicial Circuit court.

66. Defendant WWR's collection letters (attached as Exhibits 2 & 3) failed to provide Plaintiff with required notices under 15 U.S.C. § 1692g.

67. The acts of WWR were done in connection with efforts to collect the debt from KILE and were done intentionally and willfully.

68. The acts of TSI acting in concert with WWR were done in connection with efforts to collect the debt from KILE and were done intentionally and willfully.

69. WWR intentionally and willfully violated the FDCPA and MRCPA.

70. TSI intentionally and willfully violated the FDCPA and MOC.

71. An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 404 (3rd Cir. 2000).

72. Courts apply vicarious liability to debt collectors like TSI, Turnstile and U.S. Bank even when the debt collector they hire is an attorney. *See, e.g.*, *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994) (holding a debt collector vicariously liable for an attorney's violation of the FDCPA venue provision).

73. TSI, Turnstile and U.S. Bank are liable to KILE for their own acts as well as the acts and omissions of WWR and its employees done in connection with attempts to collect the debt from KILE.

74.     As a result of the facts alleged above, Plaintiff has suffered damages, including actual

        damages and emotional distress.

## **JURY DEMAND**

75.     KILE is entitled to and requests a trial by jury.  US Const. amend. 7.  Fed.R.Civ.P.

## **COUNT I**

## **Violations of the Fair Debt Collection Practices Act**
## **15 U.S.C. § 1692 et Seq.**

76.     KILE incorporates by reference all of the above paragraphs of this Complaint as though

        fully stated herein.

77.     The foregoing acts and omissions of Defendants constitute violations of the FDCPA

        including, but not limited to, each and every one of the below cited provisions of the

        FDCPA, 15 U.S.C. § 1692 et seq.

   a.   The filing of legal actions against consumers in a judicial district in which a
        consumer did not contract to receive the services in question or where the
        consumer did not reside at the commencement of the action in question in
        violation of 15 U.S.C. § 1692i;

   b.   § 1692d. Any conduct the natural consequence of which is to harass, oppress, or
        abuse any person in violation of 15 U.S.C. § 1692d;

   c.   The threat to take action that cannot be legally taken in violation of 15 U.S.C. §
        1692e(5);

   d.   Misrepresenting the character, amount or legal status of the alleged debt, in
        violation of 15 U.S.C. § 1692e(2)(A);

   e.   Making and using false, deceptive, and misleading representations in an attempt
        to collect the alleged debt, in violation of 15 U.S.C. § 1692e and 1692e(10);

   f.   Any unfair or unconscionable means to collect or attempt to collect the alleged
        debt in violation of § 1692f;

g.   Defendants violated 15 U.S.C. §1692g by failing to provide the disclosures and language specified in that section, including but not limited to the notice of rights.

78.   As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 each pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT II

## Violations of the Michigan Occupational Code

79.   KILE incorporates all of the above paragraphs by reference.

80.   Each Defendant is a "collection agency" as that term is defined in the Michigan Occupation Code ("MOC"), M.C.L. § 339.901(b) and/or a "collection agency manager" as defined by MCL 339.901 (c).

81.   Plaintiff is a consumer as defined by the MOC and is a person whom the act was intended to protect. M.C.L. § 339.901(f).

82.   Each Defendants' foregoing acts in attempting to collect this debt has violated the MOC.  Defendants' violations of the MOC include, but are not necessarily limited to, the following:

a.   Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive manner, ....;

b.     Defendants violated M.C.L. § 339.915(e) by making inaccurate, misleading, untrue, or deceptive statements or claims in a communication to collect a debt ….;

c.     Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor any of the following: (*i*) The legal status of a legal action being taken or threatened; and (*ii*) The legal rights of the creditor or debtor;

d.     Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

e.     Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

83.    Defendants' violations of the Michigan Occupation Code were willful.

84.    Plaintiff has suffered damages as a result of these violations of the Michigan Occupational Code.

## COUNT III

## Violations of the Michigan Regulation of Collection Practices Act

## (Alternative to Count II)

85.    KILE incorporates the preceding allegations by reference.

86.    Each Defendant and its employees/agents are "regulated persons" as defined by MCL 445.251(g), (x), (xi) in the Michigan Regulation of Collections Practices Act ("MRCPA") MCL 445.251, et seq.

87. Plaintiff is a person whom the act was intended protect, MCL 445.251(d).

88. Each Defendant's foregoing acts in attempting to collect this debt against Plaintiff constitute violations of the Michigan Regulation of Collections Practices Act.

89. Defendants' violations of the MRCPA include, but are not necessarily limited to, the following:

   a. Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive manner, ....;

   b. Defendants violated M.C.L. § 445.252(e) by making inaccurate, misleading, untrue, or deceptive statements or claims in a communication to collect a debt ….;

   c. Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (*i*) The legal status of a legal action being taken or threatened, and (*ii*) The legal rights of the creditor or debtor;

   b. Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt.

   c. Defendants violated M.C.L. § 445.252(q) failing to implement a procedure designed to prevent a violation by an employee.

90. Defendants' violations of the Michigan Regulation of Collections Practices Act were willful.

91. Plaintiff has suffered actual damages as a result of these willful violations of the Michigan Regulation of Collections Practices Act.

CLASS ALLEGATIONS

92.    Plaintiff defines the following classes pursuit to Fed. R. Civ. P. 23(a) and (b)(2).

    a.    Class 1. All natural persons who were sued by one or more of the defendants for collection of a private student loan debt where defendants filed the lawsuit in a forum / venue where neither the contract was signed nor the consumer resided at the time of commencement of the collection lawsuit.

    b.    Class 2. All natural persons residing in the State of Michigan to whom WWR sent a collection letter in the form represented by Exhibit 2 to the complaint in this action, seeking to collect a private student loan debt, on or after May 19, 2016 through 21 days from the date this complaint was filed, that was not returned by postal service.

    c.    Class 3. All natural persons residing in the State of Michigan to whom WWR sent a collection letter in the form represented by Exhibit 3 to the complaint in this action, seeking to collect a private student loan debt, on or after May 19, 2016 through 21 days from the date this complaint was filed, that was not returned by postal service.

    d.    Class 4. All individuals sued by one of the defendants in Michigan for collection of a private student loan debt where defendants filed the lawsuit in a forum / venue where neither the contract was signed nor the consumer resided at the time of commencement of the collection lawsuit.

93.    On information and belief, each class is so numerous that joinder of all members is

impractical. Plaintiff alleges on information and belief that there are more than 40 members of each of the classes defined above.

94. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common question is whether Plaintiff and the class members were sued by TSI and WWR for collection of a student loan debt where TSI and/or WWR working in concert filed the lawsuit in a forum / venue where neither the contract was signed nor the defendant resided at the time of commencement of the collection lawsuit. The other predominant common question is whether WWR mailed Plaintiff and other class members collection letters (attached as Exhibits 2 &3) which did not contain required "g" notice disclosures including notice of rights.

95. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained legal counsel experienced in handling class actions brought under the FDCPA.

96. A class action is an appropriate method for the fair and efficient adjudication of this controversy.

## DEMAND FOR JUDGMENT FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant.

## COUNT I

**<u>Violations of the Fair Debt Collection Practices Act 15 U.S.C. § 1692 et seq.</u>**

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each and every Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff;

## COUNT II

**<u>Violations of the Michigan Occupational Code as Alternative to Claims under the Michigan Regulation of Collection Practices Act</u>**

- for an award of actual, treble, punitive and statutory damages from each and every Defendant for the emotional distress suffered as a result of the Michigan Occupation Code violations in an amount to be determined at trial and for Plaintiff; and

- for such other and further relief as may be just and proper.

## COUNT III

**<u>Violations of the Michigan Regulation of Collection Practices Act (as Alternative to Claims under the Michigan Occupational Code)</u>**

- for an award of actual, treble, punitive and statutory damages from each and every Defendant for the emotional distress suffered as a result of the Michigan Regulation of Collection Practices Act violations in an amount to be determined at trial and for Plaintiff; and

- for such other and further relief as may be just and proper.

**WHEREFORE,** Plaintiff requests this Honorable court to enter judgment for Plaintiff and against Defendants for:

a.    Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.

b.    Statutory damages.

c.    Treble damages as provided for under the state laws cited herein.

d.    Statutory costs and attorney fees.

e.    Equitable relief for the class pursuant to MCL 445.257 in the form of an injunction prohibiting Defendants from filing time barred lawsuits and communicating with debtors in a misleading or deceptive manner.

f.    Class certification.

g.    Such other or further relief as this Court deems proper.

Dated: June 5, 2017                    Respectfully submitted,

                                       REX ANDERSON, PC

                                       /s/ Rex C. Anderson
                                       Rex Anderson PC,
                                       Attorney for Plaintiff
                                       9459 Lapeer Rd. Ste. 101

Davison MI 48423
(810) 653-3300
mied@rexandersonpc.com
(P47068)


Daniel A. Edelman
Cathleen M. Combs
Edelman, Combs, Latturner & Goodwin, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)